UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | |
|---|---|
| ADAM OWEN GRADY,<br><br>　　　　　　Plaintiff,<br><br>vs.<br><br>PENNINGTON COUNTY, individual and official capacity; KELLIE WASKO, Secretary, SD Department of Corrections, individual and official capacity; BRENT FLUKE, Acting Warden, Mike Durfee State Prison, individual and official capacity[1]; DEBRA EILERS, Unit Manager, Mike Durfee State Prison, individual and official capacity; and KELLY TJEERDSMA, Unit Coordinator, Mike Durfee State Prison, individual and official capacity,<br><br>　　　　　　Defendants. | 5:23-CV-05081-RAL<br><br>OPINION AND ORDER GRANTING PLAINTIFF'S MOTION FOR LEAVE TO PROCEED IN FORMA PAUPERIS AND 1915A SCREENING |

Plaintiff Adam Owen Grady, an inmate at the Mike Durfee State Prison (MDSP), filed a pro se civil rights lawsuit under 42 U.S.C. § 1983. Doc. 1. Grady also filed a motion for leave to proceed in forma pauperis and provided his prisoner trust account report. Docs. 2, 3.

---

[1] Grady brings claims against Brent Fluke, the Warden at Mike Durfee State Prison, in his individual and official capacity. Fluke is no longer the Warden at Mike Durfee State Prison. Under Federal Rule of Civil Procedure 25(d), "[a]n action does not abate when a public officer who is a party in an official capacity dies, resigns, or otherwise ceases to hold office while the action is pending. The officer's successor is automatically substituted as a party." Because all official capacity claims against Fluke are dismissed during screening, it would be futile to substitute his successor.

I.  **Motion for Leave to Proceed In Forma Pauperis**

Under the Prison Litigation Reform Act, a prisoner who "brings a civil action or files an appeal in forma pauperis . . . shall be required to pay the full amount of a filing fee." 28 U.S.C. § 1915(b)(1). The Court may, however, accept partial payment of the initial filing fee where appropriate. Therefore, "[w]hen an inmate seeks pauper status, the only issue is whether the inmate pays the entire fee at the initiation of the proceeding or over a period of time under an installment plan." Henderson v. Norris, 129 F.3d 481, 483 (8th Cir. 1997) (per curiam) (alteration in original) (quoting McGore v. Wrigglesworth, 114 F.3d 601, 604 (6th Cir. 1997)).

The initial partial filing fee that accompanies an installment plan is calculated according to 28 U.S.C. § 1915(b)(1), which requires a payment of 20 percent of the greater of:

(A)  the average monthly deposits to the prisoner's account; or
(B)  the average monthly balance in the prisoner's account for the 6-month period immediately preceding the filing of the complaint or notice of appeal.

Grady reports an average monthly balance for the past six months in his prisoner trust account of negative $73.89 and an average monthly deposit of $0.00. Doc. 3 at 1. Based on this information, this Court grants Grady leave to proceed in forma pauperis.

In order to pay his filing fee, Grady must "make monthly payments of 20 percent of the preceding month's income credited to the prisoner's account." 28 U.S.C. § 1915(b)(2). The statute places the burden on the prisoner's institution to collect the additional monthly payments and forward them to the court as follows:

> After payment of the initial partial filing fee, the prisoner shall be required to make monthly payments of 20 percent of the preceding month's income credited to the prisoner's account. The agency having custody of the prisoner shall forward payments from the prisoner's account to the clerk of the court each time the amount in the account exceeds $10 until the filing fees are paid.

2

28 U.S.C. § 1915(b)(2). The installments will be collected pursuant to this procedure. The Clerk of Court will send a copy of this order to the appropriate financial official at Grady's institution. Grady remains responsible for the entire filing fee, as long as he is a prisoner. See In re Tyler, 110 F.3d 528, 529–30 (8th Cir. 1997).

## II.     1915A Screening

### A.     Factual Background Alleged by Grady

#### 1.     Malicious Prosecution (Count 1)

Grady claims that Pennington County violated his Fourth Amendment right to be free from malicious prosecution during his state criminal case, 51 CRI 21-4973. Doc. 1 at 5. On December 22, 2021, an indictment for aggravated assault was filed against Grady in the Seventh Judicial Circuit of the State of South Dakota. Id. Grady alleges that the indictment lacked probable cause and jurisdiction to prosecute because grand jury witnesses were not provided their "Notice of Rights" before they testified in front of the grand jury. Id. Grady claims that Pennington County made, influenced, or participated in the decision to prosecute him. Id. Because of Pennington County's alleged conduct, Grady was arrested and imprisoned, which "caused damages of discomfort, injury to health, loss of time and deprivation of society to earn wages and damaged [his] pursuit of happiness to start an angel program to help children in need of care." Id.

#### 2.     Access to the Courts (Counts 2, 3, 4, and 5)

Grady claims that South Dakota Department of Corrections Secretary Kellie Wasko, former MDSP Warden Brent Fluke, MDSP Unit Manager Debra Eilers, and MDSP Unit Coordinator Kelly Tjeerdsma violated his First and Fourteenth Amendment rights to access the courts. Id. at 6–9.

3

Tjeerdsma and Eilers prevented Grady from receiving legal and writing assistance from a fellow inmate, Michael Merrival, to prepare legal documents and motions to state and federal courts. Id. at 6. See also Doc. 1-1 at 5, 14–15, 23–24, 38–39, 67–71, 77–80, 83, 93–94. Tjeerdsma and Eilers rejected and seized Grady's legal envelopes and motions for sentence modification, written pleadings, petitions for writ of habeas corpus, and § 1983 complaints that were written by Merrival. Doc. 1 at 6. See also Doc. 1-1 at 3, 13, 17–18, 37, 41, 43–49, 57–61, 73–76, 81, 92. Grady claims that Tjeerdsma and Eilers disciplined and retaliated against him when he received written legal assistance by Merrival to write to state and federal courts, prosecutors, or attorneys. Doc. 1 at 6. Grady claims that he cannot file pleadings for his state court appeal or petitions for writ of habeas corpus with the state and federal courts because of Tjeerdsma and Eilers. Id.

Grady claims that Wasko and Fluke were supervisors of Tjeerdsma and Eilers and that they were aware that Tjeerdsma and Eilers prevented Grady from receiving legal assistance. Id. at 7. Grady wrote kites and letters to Wasko and Fluke about Tjeerdsma and Eilers's actions and how they denied him legal assistance from another inmate and prevented him from sending legal mail. Id. Grady claims that because of Wasko and Fluke's failure to supervise, he could not receive rulings and decisions on his pleadings. Id.

Grady claims that Wasko, Fluke, Eilers, and Tjeerdsma denied him legal supplies, including paper, ink pens, legal envelopes, and legal copies. Id. at 8–9. For indigent inmates like Grady, the limit to legal paper is set at forty sheets of paper and forty copies per month. Id. at 8. See also Doc. 1-1 at 11, 16, 19–20, 30, 62–66, 96–97. Grady claims that the quantity of paper is insufficient because he has multiple pending legal actions. Doc. 1 at 8. Grady also claims that the $15.00 monthly limit for indigent legal postage is insufficient for his legal matters, which resulted in him having to mail bulk legal pleadings. Id. Wasko, Fluke, Eilers, and Tjeerdsma have denied

4

him more supplies to prepare his legal filings. Id. See also Doc. 1-1 at 50–51, 97, 99 (discussing availability of ink pens and envelopes). Grady claims that he cannot prevail on his non-frivolous legal proceedings because he cannot exhaust his state court remedies, appeal his state court case to the Supreme Court of South Dakota, and file writs of habeas corpus because he has no legal supplies to assist with filing. Doc. 1 at 8–9.

### 3. Hygiene (Count 6)

Grady claims that Wasko, Fluke, Eilers, and Tjeerdsma have denied indigent inmates hygiene products, including shampoo, conditioner, body wash, deodorant, toothpaste, toothbrush, and tooth floss picks for one to three months. Id. at 10. See also Doc. 1-1 at 55–56, 84–86, 93, 98–99. Grady has ordered the hygiene products from commissary, but "the indigent commissary does not allow purchase as ran out of supplies or that there was an error on some of these items that was denied to receive for up to three months." Doc. 1 at 10. Grady has complained about not receiving hygiene products, but Defendants ignored the supply issues and errors. Id. Because of the Defendants' actions, Grady suffered from "dandruff, dry scalp, stink smell, dry and itchy skin, Gums bleed, teeth deteriorated [sic], skin rash, causing mental anguish and physical pain." Id.

### 4. Medical Needs (Count 7)

Wasko, Fluke, Eilers, and Tjeerdsma have denied Grady's requests for a colonoscopy and a gastroscopy with a biopsy. Id. at 11. See also Doc. 1-1 at 6–10, 25–29, 98. Grady alleges that he has colon and bowel complications as well as kidney pain and complication. Doc. 1 at 11. Grady also suffers from pain and complications because of a root canal procedure, and he has been denied necessary medication, including pain medication, because of prison policies. Id. See also Doc. 1-1 at 34–35. Grady alleges that he has suffered injuries of "pain and complications with his

bowels, abodemen [sic], kidney, and tooth canal pain as causing mental anguish and physical pain in [sic] suffering." Doc. 1 at 11.

### 5. Request for Relief

Grady sues all Defendants in their individual and official capacities. Id. at 2–3. He seeks $5,000,000 for his pain and suffering. Id. at 12. He also asks this Court to release him from confinement "as to receive the assistance and help from the free world of the ability to attend the community health clinics and pursue happiness with a new life free from unconstitutional convictions[.]" Id. He also asks that this Court "immediately release [him] from the judgment of conviction as relief and remedy from [his] filed federal writ of habeas corpus action of 28 U.S.C. § 2254 that he filed as same relief requested, and to grant any injunction reliefs [sic], and or consider the reliefs of release a Preiser v. Rodriguez² claim[.]" Id.

### B. Legal Standard

A court when screening under § 1915A must assume as true all facts well pleaded in the complaint. Est. of Rosenberg v. Crandell, 56 F.3d 35, 36 (8th Cir. 1995). Pro se and civil rights complaints must be liberally construed. Erickson v. Pardus, 551 U.S. 89, 94 (2007) (per curiam); Bediako v. Stein Mart, Inc., 354 F.3d 835, 839 (8th Cir. 2004) (citation omitted). Even with this construction, "a *pro se* complaint must contain specific facts supporting its conclusions." Martin v. Sargent, 780 F.2d 1334, 1337 (8th Cir. 1985) (citation omitted); see also Ellis v. City of Minneapolis, 518 F. App'x 502, 504 (8th Cir. 2013) (per curiam) (citation omitted). Civil rights complaints cannot be merely conclusory. Davis v. Hall, 992 F.2d 151, 152 (8th Cir. 1993) (per curiam) (citation omitted); Parker v. Porter, 221 F. App'x 481, 482 (8th Cir. 2007) (per curiam) (citations omitted).

---

² 411 U.S. 475 (1973).

A complaint "does not need detailed factual allegations . . . [but] requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.]" Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal citation omitted). If a complaint does not contain these bare essentials, dismissal is appropriate. See Beavers v. Lockhart, 755 F.2d 657, 663 (8th Cir. 1985) (citation omitted). Twombly requires that a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true[.]" 550 U.S. at 555 (internal citation omitted); see also Abdullah v. Minnesota, 261 F. App'x 926, 927 (8th Cir. 2008) (noting that a complaint "must contain either direct or inferential allegations respecting all material elements necessary to sustain recovery under some viable legal theory" (citing Twombly, 550 U.S. at 553–63)). Further, "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of the facts alleged is improbable, and that a recovery is very remote and unlikely." Braden v. Wal-Mart Stores, Inc., 588 F.3d 585, 594 (8th Cir. 2009) (internal quotation marks omitted) (quoting Twombly, 550 U.S. at 556). Under 28 U.S.C. § 1915A, the court must screen prisoner complaints and dismiss them if they "(1) [are] frivolous, malicious, or fail[] to state a claim upon which relief may be granted; or (2) seek[] monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b).

### C. Legal Analysis

#### 1. Claims Against Pennington County

Grady sues Pennington County for malicious prosecution during the grand jury proceedings. Doc. 1 at 5. "[A] local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents." Monell v. Dep't of Soc. Servs., 436 U.S. 658, 694 (1978). A municipal government may be sued only "when execution of a government's policy or

custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy," deprives a plaintiff of a federal right. Id.; see also Clay v. Conlee, 815 F.2d 1164, 1170 (8th Cir. 1987) (finding that "the [governmental] entity's official 'policy or custom' must have 'caused' the constitutional violation" in order for that entity to be liable under § 1983). Because Grady does not allege that Pennington County had a policy or custom that caused a violation of his federal rights, his claim against Pennington County is dismissed without prejudice under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

### 2. Official Capacity Claims for Money Damages

Grady brings claims against all Defendants in their official capacities for money damages. Doc. 1 at 2–3, 12. Defendants were employees of the State of South Dakota at the time of their alleged actions. See generally id. As the Supreme Court of the United States has stated, "a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office." Will v. Mich. Dep't of State Police, 491 U.S. 58, 71 (1989) (citing Brandon v. Holt, 469 U.S. 464, 471 (1985)). Thus, it is a suit against the state itself. Id. While "[§] 1983 provides a federal forum to remedy many deprivations of civil liberties, . . . it does not provide a federal forum for litigants who seek a remedy against a State for alleged deprivations of civil liberties." Id. at 66.

The Eleventh Amendment generally acts as a bar to suits against a state for money damages unless the state has waived its sovereign immunity. Id. Here, Grady seeks both money damages and injunctive relief. Doc. 1 at 12. The State of South Dakota has not waived its sovereign immunity. Thus, Grady's claims against Wasko, Fluke, Eilers, and Tjeerdsma in their official capacities for money damages are dismissed with prejudice under 28 U.S.C §§ 1915(e)(2)(B)(iii) and 1915A(b)(2).

### 3. Claims for Injunctive Relief

Grady requests that the Court order his release "from the imprisonment or from the confinement as to receive the assistance and help from the free world of the ability to attend the community health clinics and pursue happiness with a new life free from unconstitutional convictions[.]" Doc. 1 at 12. Grady requests such relief "as to immediately release [him] from the judgment of conviction as relief and remedy from [Grady's] federally filed writ of habeas corpus action of 28 U.S.C. § 2254 that he filed as same relief requested, and to grant any injunction reliefs, and or consider the reliefs of release" as a Preiser claim. Id. (grammar errors in original). "[H]abeas corpus is the exclusive remedy for a state prisoner who challenges the fact or duration of his confinement and seeks immediate or speedier release, even though such a claim may come within the literal terms of § 1983." Heck v. Humphrey, 512 U.S. 477, 481 (1994) (citing Preiser, 411 U.S. at 488–90). The only injunctive relief that Grady requests is release from confinement. Doc. 1 at 12. Because the injunctive relief Grady requests is not available in a § 1983 action, his claims for injunctive relief are dismissed without prejudice under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1) to permit him to file a § 2254 petition alleging his claims for habeas relief.[3]

### 4. Individual Capacity Claims for Money Damages

"Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." Ashcroft v. Iqbal, 556 U.S. 662, 676 (2009).

---

[3] Grady filed a § 2254 petition on November 1, 2023, nineteen days prior to filing his current § 1983 action. Doc. 1; Grady v. Fluke, 5:23-CV-05075-RAL, Doc. 1. On January 2, 2024, Grady's § 2254 petition was dismissed without prejudice because he failed to exhaust his administrative remedies. Grady, 5:23-CV-05075-RAL, Doc. 8 at 5. In accordance with the order dismissing his § 2254 petition, he must exhaust his administrative remedies before filing a § 2254 petition. Id.

9

> Thus, each Government official . . . is only liable for his or her own misconduct. As we have held, a supervising officer can be liable for an inferior officer's constitutional violation only if he directly participated in the constitutional violation, or if his failure to train or supervise the offending actor caused the deprivation.

Parrish v. Ball, 594 F.3d 993, 1001 (8th Cir. 2010) (cleaned up). Grady's individual capacity claims must allege that each individual Defendant either directly participated in the unconstitutional conduct or caused the conduct to occur through a failure to train or supervise the offending actor. See id.

### a. First and Fourteenth Amendment Right to Access the Courts

Grady alleges claims for violation of his First and Fourteenth Amendment rights to access the courts against Tjeerdsma, Eilers, Fluke, and Wasko in their individual capacities. Doc. 1 at 6–9. "The Constitution guarantees prisoners a right to access the courts." White v. Kautzky, 494 F.3d 677, 679 (8th Cir. 2007). "[T]he basis of the constitutional right of access to the courts" is "unsettled[.]" Christopher v. Harbury, 536 U.S. 403, 415 (2002). But the Supreme Court of the United States has held that "the fundamental constitutional right of access to the courts requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law." Bounds v. Smith, 430 U.S. 817, 828 (1977).

To succeed on a claim for denial of access to the courts, a plaintiff must show that he suffered actual injury as a result of the defendants' actions. Lewis v. Casey, 518 U.S. 343, 349 (1996). In order to satisfy the actual injury requirement, a plaintiff must "demonstrate that a nonfrivolous legal claim had been frustrated or was being impeded." Johnson v. Missouri, 142 F.3d 1087, 1089 (8th Cir. 1998) (quoting Lewis, 518 U.S. at 353 (footnotes omitted)). The actual injury requirement is a high threshold. Hartsfield v. Nichols, 511 F.3d 826, 831–32 (8th Cir.

2008). "Actual injury" means "actual prejudice with respect to contemplated or existing litigation, such as the inability to meet a filing deadline or to present a claim." Lewis, 518 U.S. at 348. "The right of access to the courts is satisfied if the prisoner has 'the capability of bringing contemplated challenges to sentences or conditions of confinement before the courts.'" Zink v. Lombardi, 783 F.3d 1089, 1108 (8th Cir. 2015) (quoting Lewis, 518 U.S. at 356).

### (i) Claims for Denial of Access to Inmate Writ Writer

Grady claims that Tjeerdsma and Eilers have prevented him from receiving legal assistance from Merrival, an inmate writ writer. Doc. 1 at 6. He also claims that Wasko and Fluke supervised Tjeerdsma and Eilers and received letters about Tjeerdsma and Eilers preventing him from receiving legal assistance from Merrival. Id. at 7. The right to access the court "entitles inmates to receive legal assistance from fellow inmates unless prison officials provide reasonable alternative assistance." Gassler v. Rayl, 862 F.2d 706, 707 (8th Cir. 1988) (citing Johnson v. Avery, 393 U.S. 483, 490 (1969)). "Prison officials are required to permit inmates to seek the assistance of other inmates only when there are no other reasonable alternatives to provide the inmates with meaningful access to the courts." Little v. Norris, 787 F.2d 1241, 1244 (8th Cir. 1986) (citing Johnson, 393 U.S. at 488, 490). Grady has not claimed that that he was denied reasonable alternatives, such as access to a law library or other legal resources, to prepare meaningful legal filings. See Doc. 1. "And an inmate does not have a right to meet with other inmates, nor can a non-attorney inmate represent as if an attorney another inmate." Rosado v. Wasko, 5:23-CV-05069-RAL, 2024 WL 2105580, at *3 (D.S.D. May 10, 2024) (citing Kinsey v. Se. Corr. Ctr., 2022 WL 4299810, at *3 (E.D. Mo. Sept. 19, 2022)). Thus, Grady's access to the court claim for denial of access to an inmate writ writer is dismissed without prejudice under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

11

### (ii) Remaining Access to the Courts Claims

Grady claims that Tjeerdsma and Eilers have seized his legal documents; he also claims that Wasko and Fluke, as supervisors of Tjeerdsma and Eilers, were made aware of their staff's interference with Grady's legal papers and mail but did not intervene. Doc. 1 at 6–7. Tjeerdsma, Eilers, Wasko, and Fluke have denied Grady sufficient supplies, including paper, pens, envelopes, and copies, which prevented Grady from being able to exhaust his state-court remedies and from being able to file viable writs of habeas corpus in state and federal courts.[4] Id. at 8–9. Thus, Grady has alleged sufficient facts for his First and Fourteenth Amendment access to the courts claims against Tjeerdsma, Eilers, Wasko, and Fluke in their individual capacities for money damages to survive § 1915A screening.

### b. First Amendment Right to Send and Receive Mail

Grady claims that Tjeerdsma and Eilers have seized and refused to send his legal documents and envelopes that included Merrival's handwritten material; he also claims that Wasko and Fluke have allowed the seizure of legal mail. Doc. 1 at 6–7. Grady included a grievance alleging that Tjeerdsma and Eilers seized mail, which was addressed to a state-court judge and contained his state writ of habeas corpus. Doc. 1-1 at 41.

---

[4] In Grady's petition for writ of habeas corpus under 28 U.S.C. § 2254, he "submitted 176 pages of pleadings and correspondence that he asserts demonstrates that the available state remedies are so deficient as to render futile any effort to obtain relief thereby excusing him from exhausting his state court remedies." Grady, 5:23-CV-05075, Doc. 8 at 4. However, this Court determined:
> Any hurdles Grady has faced are due to his failure to comply with the applicable rules of civil and appellate procedure rather than the deficiency of the available state remedies. The record does not support Grady's bare allegation that the available state court remedies are so deficient as to render futile any effort to obtain relief.

Id. (internal citation omitted). Despite Grady alleging conflicting theories in his § 2254 petition and his current § 1983 case, this Court assumes as true the facts alleged in his complaint that Defendants have denied him access to the court by hindering his ability to exhaust his state-court remedies. Id.; Doc. 1 at 6–9.

12

Inmates have a First Amendment right to send and receive mail. Weiler v. Purkett, 137 F.3d 1047, 1050 (8th Cir. 1998). But that "right may be limited by prison regulations that are reasonably related to legitimate penological interests." Id. In Turner v. Safley, the Supreme Court held that prison rules and restrictions on First Amendment rights are constitutional only "if [they are] reasonably related to legitimate penological interests." 482 U.S. 78, 89 (1987). The Court in Turner provided four factors to determine whether a prison rule withstands scrutiny:

> (1) whether there is a valid rational connection between the regulation and the legitimate government interest it purports to further; (2) whether the inmate has an alternative means of exercising his constitutional right; (3) the impact that accommodation of the inmate's right would have upon others, including inmates as well as non-inmates; and (4) the absence of a ready alternative to the regulation.

Thongvanh v. Thalacker, 17 F.3d 256, 259 (8th Cir. 1994). This Court must give "considerable deference to the determinations of prison administrators who, in the interests of security, regulate the relations between prisoners and the outside world." Thornburgh v. Abbott, 490 U.S. 401, 408 (1989) (citation omitted). Deference is accorded to prison administrators because the realities of running a penal institution are complex, and courts are ill-equipped to deal with problems of prison administration. Jones v. N.C. Prisoners' Lab. Union, Inc., 433 U.S. 119, 136 (1977). As the Supreme Court observed in Turner, "[r]unning a prison is an inordinately difficult undertaking that requires expertise, planning, and the commitment of resources, all of which are the province of the legislature and executive branches of government." 482 U.S. at 84–85.

Ultimately, seizure of and refusal to send legal mail written by other inmates may be related to a legitimate penological interest. However, Grady has alleged sufficient facts for his First Amendment right to send and receive mail claim against Tjeerdsma, Eilers, Wasko, and Fluke in their individual capacities for money damages to survive § 1915A screening.

### c. First Amendment Retaliation

Grady alleges that Tjeerdsma and Eilers "disciplines and retaliates against [him] if he receives written legal assistance by Merrival[.]" Doc. 1 at 6. To allege a First Amendment retaliation claim, a plaintiff must "show (1) he engaged in a protected activity, (2) the government official took adverse action against him that would chill a person of ordinary firmness from continuing in the activity, and (3) the adverse action was motivated at least in part by the exercise of the protected activity." Spencer v. Jackson Cnty., 738 F.3d 907, 911 (8th Cir. 2013) (quoting Revels v. Vincenz, 382 F.3d 870, 876 (8th Cir. 2004)). "[T]he plaintiff must show the official took the adverse action because the plaintiff engaged in the protected [activity]." Revels, 382 F.3d at 876. Here, Grady generally alleges that Tjeerdsma and Eilers retaliated against him. Doc. 1 at 6. Grady's general allegations of retaliation without more are insufficient to state a claim upon which relief may be granted. Thus, Grady's First Amendment retaliation claim against Tjeerdsma and Eilers is dismissed without prejudice for failure to state a claim upon which relief may be granted under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

### d. Eighth Amendment

#### (i) Deliberate Indifference to Conditions of Confinement

Liberally construing Grady's complaint, he alleges an Eighth Amendment conditions of confinement claim against Wasko, Fluke, Eilers, and Tjeerdsma for failure to provide him with hygiene products. See Doc. 1 at 10. "[T]he Constitution 'does not mandate comfortable prisons'; it prohibits 'inhumane ones.'" Williams v. Delo, 49 F.3d 442, 445 (8th Cir. 1995) (quoting Farmer v. Brennan, 511 U.S. 825, 832 (1994)). The Supreme Court has clarified that only "extreme deprivations" that deny "the minimal civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment violation." Hudson v. McMillian,

14

503 U.S. 1, 9 (1992) (internal quotation omitted). The Supreme Court has listed as basic human needs "food, clothing, shelter, medical care, and reasonable safety[.]" Helling v. McKinney, 509 U.S. 25, 32 (1993) (internal quotation omitted).

In order to prevail on an Eighth Amendment conditions of confinement claim, a prisoner must prove that (1) objectively, the deprivation was "sufficiently serious" to deprive him of "the minimal civilized measure of life's necessities" or to constitute "a substantial risk of serious harm" to his health or safety; and (2) subjectively, the defendants were deliberately indifferent to the risk of harm posed by the deprivation. Simmons v. Cook, 154 F.3d 805, 807 (8th Cir. 1998) (quoting Farmer, 511 U.S. at 834). An Eighth Amendment challenge to conditions of confinement requires examining the totality of the circumstances. Villanueva v. George, 659 F.2d 851, 854 (8th Cir. 1981) (en banc). Even if no single condition would be unconstitutional in itself, the cumulative effect of prison conditions may subject inmates to cruel and unusual punishment. See id.; see also Tyler v. Black, 865 F.2d 181, 183 (8th Cir. 1989) (en banc).

Grady claims that Wasko, Fluke, Eilers, and Tjeerdsma have denied to indigent inmates like Grady hygiene supplies including shampoo, conditioner, toothpaste, toothbrush, tooth floss picks, body wash, and deodorant for one to three months. Doc. 1 at 10. The Eighth Circuit has held that "inmates are entitled to reasonably adequate sanitation, personal hygiene, and laundry privileges, particularly over a lengthy course of time." Howard v. Adkison, 887 F.2d 134, 137 (8th Cir. 1989) (citations omitted). See also Myers v. Hundley, 101 F.3d 542, 544 (8th Cir. 1996) ("a long-term, repeated deprivation of adequate hygiene supplies violates inmates' Eighth Amendment rights"). Although Grady alleges that the denial of hygiene supplies only lasted one to three months, he allegedly suffered from dandruff, dry scalp, bleeding gums, teeth deterioration, and other symptoms. Doc. 1 at 10. Some courts have held that denial of hygiene

products can violate the Eighth Amendment if resulting in injury or damage to health. See Penrod v. Zavaras, 94 F.3d 1399, 1406 (10th Cir. 1996) (reversing grant of summary judgment on conditions of confinement claim when denial of hygiene items caused plaintiff's gums to bleed and recede as well as tooth decay that required treatment by a dentist); Glenn-El v. Hanecock, 2022 WL 111046, at *2–4 (E.D. Mo. Jan. 12, 2022) (holding that Eighth Amendment conditions of confinement claim for denial of hygiene products for five months resulting in rashes, other bodily concerns, depression, and suicidal thoughts survived screening). Thus, this Court cannot conclude at this stage that Grady's conditions of confinement claim is wholly without merit, and his Eighth Amendment conditions of confinement claim against Wasko, Fluke, Eilers, and Tjeerdsma in their individual capacities for money damages survives § 1915A screening.

### (ii) Deliberate Indifference to Serious Medical Needs

Grady alleges a claim for deliberate indifference to his serious medical needs in violation of his Eighth Amendment right to be free from cruel and unusual punishment against Wasko, Fluke, Eilers, and Tjeerdsma. Doc. 1 at 11. "[D]eliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain' proscribed by the Eighth Amendment." Estelle v. Gamble, 429 U.S. 97, 104 (1976) (quoting Gregg v. Georgia, 428 U.S. 153, 173 (1976)). "This is true whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." Id. at 104–05 (footnotes omitted). "This conclusion does not mean, however, that every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment." Id. at 105. "[A] prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." Id. at 106. Allegations of negligence will not suffice, nor

will mere disagreement with treatment decisions. Jolly v. Knudsen, 205 F.3d 1094, 1096 (8th Cir. 2000) (citing Est. of Rosenberg, 56 F.3d at 37).

The deliberate indifference standard includes both an objective and subjective component. Dulany v. Carnahan, 132 F.3d 1234, 1239 (8th Cir. 1997) (citing Coleman v. Rahija, 114 F.3d 778, 784 (8th Cir. 1997)). The plaintiff "must demonstrate (1) that [he] suffered objectively serious medical needs and (2) that the prison officials actually knew of but deliberately disregarded those needs." Id. (citing Coleman, 114 F.3d at 784). "A serious medical need is 'one that has been diagnosed by a physician as requiring treatment, or one that is so obvious that even a layperson would easily recognize the necessity for a doctor's attention.'" Coleman, 114 F.3d at 784 (quoting Camberos v. Branstad, 73 F.3d 174, 176 (8th Cir. 1995)). To be liable for deliberately disregarding medical needs, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer, 511 U.S. at 837.

Grady has not alleged a claim arising to a violation of the Eighth Amendment. See Docs. 1, 1-1. Grady claims that medical staff denied his requests for a colonoscopy and gastroscopy with a biopsy for his colon and bowel complications. Doc. 1 at 11. Grady does not allege that Tjeerdsma, Eilers, Fluke, and Wasko are responsible for deciding whether these medical tests are performed, and even if they were, Grady appears to allege mere disagreement with treatment. See generally id. Further, Grady attached grievance responses, which indicated that Grady was seen by medical staff on September 13, 2023, and that medical staff was contacted about his grievances. Doc. 1-1 at 6, 9, 25–26, 28.

Grady also claims that he has dental pain from complications with a root canal and that he has been denied pain medication and other medication because of prison policies. Doc. 1 at 11.

17

Grady alleges that "Defendants ha[ve] prison policies they follow that they refuse to provide the proper medical care of [his] health concerns[.]" Id. However, Grady attached a grievance he filed, which indicated that he received pain medication for his dental concerns but was still in substantial pain. Doc. 1-1 at 35. The grievance response signed by Tjeerdsma indicated that Grady was sent to dental when he complained of tooth pain. Id. at 34. Thus, Grady has not alleged sufficient facts to show deliberate indifference to serious medical needs. Thus, his Eighth Amendment deliberate indifference to serious medical needs claim is dismissed without prejudice for failure to state a claim upon which relief may be granted under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

### III.  Conclusion

Accordingly, it is

ORDERED that Grady's motion for leave to proceed in forma pauperis, Doc. 2, is granted. It is further

ORDERED that the Clerk of Court shall send a copy of this order to the appropriate financial official at Grady's institution. It is further

ORDERED that the institution having custody of Grady is directed that whenever the amount in Grady's trust account, exclusive of funds available to him in his frozen account, exceeds $10.00, monthly payments that equal 20 percent of the funds credited the preceding month to Grady's trust account shall be forwarded to the U.S. District Court Clerk's Office under 28 U.S.C. § 1915(b)(1), until the $350 filing fee is paid in full. It is further

ORDERED that Grady's claim against Pennington County is dismissed without prejudice under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1). It is further

ORDERED that Grady's claims against Wasko, Fluke, Eilers, and Tjeerdsma in their official capacities for money damages are dismissed with prejudice under 28 U.S.C §§ 1915(e)(2)(B)(iii) and 1915A(b)(2). It is further

ORDERED that Grady's official capacity claims for injunctive relief are dismissed without prejudice under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1). It is further

ORDERED that Grady's First Amendment access to the court claims against Tjeerdsma, Eilers, Wasko, and Fluke in their individual capacities for money damages survives § 1915A screening. It is further

ORDERED that Grady's First Amendment right to send and receive mail claim against Tjeerdsma, Eilers, Wasko, and Fluke in their individual capacities for money damages survives § 1915A screening. It is further

ORDERED that Grady's Eighth Amendment conditions of confinement claim against Wasko, Fluke, Eilers, and Tjeerdsma in their individual capacities for money damages survives § 1915A screening. It is further

ORDERED that Grady's remaining claims are dismissed without prejudice under 28 U.S.C. § 1915(e)(2)(B)(ii) and 1915A(b)(1). It is further

ORDERED that the Clerk of Court is directed to send Grady a § 2254 packet in case he has exhausted claims that his conviction or sentence was unconstitutional. It is further

ORDERED that the Clerk shall send blank summons forms and United States Marshals Service Forms (Form USM-285) to Grady so that he may complete the form to cause the complaint to be served upon Defendants Wasko, Fluke, Eilers, and Tjeerdsma. It is further

ORDERED that Grady shall complete and send the Clerk of Court a separate summons and USM-285 form for each Defendant within **thirty days from the date of this Court's**

**screening order**. Upon receipt of the completed summons and USM-285 forms, the Clerk of Court will issue the summons. If the completed summons and USM-285 form are not submitted as directed, the complaint may be dismissed. It is further

ORDERED that the United States Marshals Service shall serve the completed summonses, together with a copy of the complaint, Doc. 1, the attachments to the complaint, Doc. 1-1, and this order upon the Defendants. It is further

ORDERED that Defendants serve and file an answer or responsive pleading to the amended complaints and supplement on or before 21 days following the date of service or 60 days if the Defendant falls under Fed. R. Civ. P. 12(a)(2) or (3). It is finally

ORDERED that Grady keep the Court informed of his current address at all times. All parties are bound by the Federal Rules of Civil Procedure and by this Court's Civil Local Rules while this case is pending.

DATED December 4th, 2024.

BY THE COURT:

_____
ROBERTO A. LANGE
CHIEF JUDGE