UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | |
|---|---|
| ADAM OWEN GRADY,<br><br>Plaintiff,<br><br>vs.<br><br>KELLIE WASKO, SECRETARY, SD DEPARTMENT OF CORRECTIONS, INDIVIDUAL CAPACITY; BRENT FLUKE, WARDEN, MIKE DURFEE STATE PRISON, INDIVIDUAL CAPACITY; DEBRA EILERS, UNIT MANAGER, MIKE DURFEE STATE PRISON, INDIVIDUAL CAPACITY; AND KELLY TJEERDSMA, UNIT COORDINATOR, MIKE DURFEE STATE PRISON, INDIVIDUAL CAPACITY;<br><br>Defendants. | 5:23-CV-05081-RAL<br><br><br>OPINION AND ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT |

Plaintiff Adam Owen Grady, an inmate in the custody of the South Dakota Department of Corrections, filed a pro se civil rights lawsuit under 42 U.S.C. § 1983. Doc. 1. Grady is now confined at the Rapid City Minimum Unit, but this lawsuit arises out of Grady's confinement at Mike Durfee State Prison (MDSP) in Springfield, South Dakota. Doc. 1; Doc. 72. This Court granted Grady's motion for leave to proceed in forma pauperis and screened his complaint, directing service in part and dismissing in part. Doc. 11. Grady's First Amendment access-to-the-court claims, First Amendment right to send and receive mail claim, and Eighth Amendment conditions-of-confinement claim against Kellie Wasko, the former Secretary of the South Dakota Department of Corrections; Brent Fluke, the former Warden of MDSP; Debra Eilers, a unit

manager at MDSP; and Kelly Tjeerdsma, a unit coordinator at MDSP, in their individual capacities survived screening. Id. at 19. Defendants now move for summary judgment. Doc. 41. Grady opposes Defendants' motion for summary judgment.[1] Docs. 52, 53, 54, 55, 56. For the reasons explained herein, this Court grants Defendants' motion for summary judgment.

## I.    Facts[2]

### A.    Grady's State Court Criminal Proceedings

On December 22, 2021, an indictment was filed in Pennington County, South Dakota (51CRI21-004973) charging Grady with two counts of aggravated assault. Doc. 43 ¶ 35; Doc. 43-1 at 1; Doc. 55 ¶ 35. Grady was convicted of one count of aggravated assault. Doc. 43 ¶ 37; Doc. 43-1 at 1; Doc. 55 ¶ 37. Grady was sentenced on November 23, 2022, and the judgment of conviction was entered on November 29, 2022. Doc. 43 ¶¶ 37, 38; Doc. 43-4; Doc. 55 ¶¶ 37, 38. On December 19, 2022, Grady filed a notice of appeal to the Supreme Court of the State of South Dakota from the judgment of conviction in 51CRI21-004973. Doc. 43 ¶¶ 11, 39; Doc. 43-1 at 1;

---

[1] Grady labels two of his responsive filings as motions. Docs. 52, 56. These filings are more appropriately considered briefs because they contain arguments and authorities. Grady does not need leave of Court to file a brief opposing defendants' motion for summary judgment. See D.S.D. Civ. LR 7.1.B (providing that any party opposing a motion may file "a responsive brief containing opposing legal arguments and authorities in support thereof."). Grady's motions opposing defendants' motion for summary judgment, Docs. 52, 56, are denied as moot, but this Court has considered the arguments and authorities in all of Grady's responsive filings, including those labeled as motions.

[2] This Court takes the facts primarily from those portions of Defendants' statement of material facts, Doc. 43, Grady does not dispute. For the portions Grady properly disputes, this Court cites to both parties' versions and is mindful that genuine disputes of material fact are resolved at this summary judgment stage in Grady's favor.

2

Doc. 55 ¶¶ 11, 39. On November 2, 2023, the appeal was dismissed at Grady's request. Doc. 43 ¶¶ 13, 41; Doc. 43-1 at 1; Doc. 55 ¶¶ 13, 41.

Grady contends his court-appointed counsel "coerced" him to dismiss his appeal "by telling him it was Habeas Corpus issues and he was going to lose anyway." Doc. 54 ¶ 6; see also Doc. 55 ¶¶ 13, 41. Grady filed a state habeas corpus petition challenging his conviction in 51CRI21-004973 on May 14, 2024, nunc pro tunc May 13, 2024. Doc. 43 ¶ 12; Doc. 43-2; Doc. 55 ¶ 12. Grady filed a supplemental application for writ of habeas corpus on January 29, 2025, nunc pro tunc January 27, 2025. Doc. 43 ¶ 44; Doc. 43-1 at 1; Doc. 55 ¶ 44. In a Memorandum Opinion and Order dated June 23, 2025, then-Circuit Court Judge Robert Gusinsky denied Grady's application for petition for writ of habeas corpus for failure to state a claim upon which relief can be granted. Doc. 43-1.

### B.     Access-to-the-Courts Policy

During all relevant times, the South Dakota Department of Corrections had in place an "Offender Access to the Courts" Policy, Policy Number 1.3.E.1 ("Access-to-the-Courts Policy"). Doc. 43 ¶ 18; Doc. 43-6; Doc. 55 ¶ 18. Grady does not dispute that Policy Number 1.3.E.1 was in effect during all relevant times, but he contends that he was not afforded access to legal material as provided in the Access-to-the-Courts Policy. Doc. 54 ¶ 7; Doc. 55 ¶¶ 17, 18, 19. The Access-to-the-Courts Policy provides that "[o]ffenders shall have access to approved legal paper, writing tools, and legal and/or manila envelopes through commissary." Doc. 43-6 at 2; see also Doc. 55 ¶ 17. The Access-to-the-Courts Policy also provides that envelopes for legal mail are available from staff and that postage will be paid by the Department of Corrections for up to five mailings per week or fifteen dollars ($15.00) total postage per month. Doc. 43-6 at 2; Doc. 43 ¶ 19. Finally, the Access-to-the-Courts Policy provides that the cost of legal photocopies is five cents ($0.05)

3

per sheet, but indigent offenders are permitted to make photocopies of legal materials for a value up to but not exceeding two dollars ($2.00) per month. Doc. 43-6 at 3; see also Doc. 43 ¶ 20; Doc. 55 ¶ 20.

The Access-to-the-Courts Policy provides that legal assistance is available to an inmate if the inmate meets one of three criteria: limited English proficient, illiterate, or disabled. Doc. 43 ¶ 60; Doc. 43-6 at 4. According to the Policy, an inmate is limited English proficient if the inmate is unable to read, write, or speak English as determined by the DOC Education staff. Doc. 43-6 at 4. An inmate is illiterate if the inmate is unable to read or write the English alphabet as determined by the DOC Education staff. Id. An inmate is disabled for purposes of the Access-to-the-Courts Policy if the inmate has a "disability that prevents the offender from drafting pleadings or using an offender tablet or the kiosks." Id.

The Access-to-the-Courts Policy permits offenders to assist other offenders with legal matters. Id. at 3; Doc. 43 ¶ 50. But offenders are not permitted to possess the legal work of another offender outside the presence of the offender they are assisting. Doc. 43-6 at 5; Doc. 43 ¶ 50. Grady contends that it was permissible for him to possess legal work prepared by another inmate, Merrival, because at the time Grady and Merrival were housed in the same room. Doc. 55 ¶ 50 (citing Doc. 54 ¶ 11). The Offender Personal Property Policy provides that "[o]ffenders are not allowed to retain in their possession, property (including legal materials or correspondence) belonging to or issued to another offender." Doc. 43 ¶ 51; Doc. 43-7 at 2; Doc. 55 ¶ 51 (citing Doc. 54). Items not on the allowable property list are considered contraband. Doc. 43 ¶ 51; Doc. 43-7 at 4.

4

### C.    Grady's Request for Ink Pens

On September 28, 2023, Grady submitted a kite to Tjeerdsma requesting reimbursement for the ink pens he had obtained from the commissary because "they were not good for [his] leagle [sic] work[.]" Doc. 1-1 at 97 (capitalization in original omitted); see also Doc. 43 ¶ 14; Doc. 55 ¶ 14. In an informal resolution request dated October 16, 2023, Grady reported to Tjeerdsma that he could not order ink pens for his legal work from the indigent commissary because they were out of stock. Doc. 1-1 at 51; Doc. 43 ¶ 15; Doc. 55 ¶ 15. Tjeerdsma responded to Grady's informal resolution request on October 19, 2023, and informed him that he had been unable to order ink pens due to an error that has been corrected. Doc. 1-1 at 50; Doc. 43 ¶ 16; Doc. 55 ¶ 16.

### D.    Grady's Requests for Paper

On September 28, 2023, Grady submitted a kite to Tjeerdsma asking about the provision of paper for legal work, and Tjeerdsma responded that unit staff can provide to indigent offenders 40 sheets of paper per month. Doc. 1-1 at 97: Doc. 43 ¶ 23; Doc. 55 ¶ 23. In another kite submitted to Tjeerdsma on the same day, Grady requested 20 sheets of paper for his state habeas petition. Doc. 1-1 at 96; Doc. 43 ¶ 24; Doc. 55 ¶ 24. Tjeerdsma responded that Grady had reached his monthly limit for September. Doc. 1-1 at 96.

On September 29, 2023, Grady submitted an informal resolution request to Eilers stating that 40 sheets of legal paper per month is not adequate because he had a direct appeal pending,[3] planned to file a civil action, and anticipated filing a habeas petition. Doc. 1-1 at 66; Doc. 43 ¶ 25; Doc. 55 ¶ 25. As a remedy, Grady requested 20 sheets of paper per week because he is indigent.

_____

[3] It is undisputed that Grady was represented by counsel in his direct appeal. Doc. 43 ¶ 36; Doc. 55 ¶ 36.

5

Doc. 1-1 at 66. In response to Grady's informal resolution request, Eilers referred Grady to the applicable provision of the Access-to-the-Courts Policy. Doc. 1-1 at 65.

Grady submitted two requests for administrative remedy dated October 11, 2023. Doc. 1-1 at 16, 64. In one of the administrative remedy requests, Grady contended that Tjeerdsma had made a mistake when tracking the number of sheets of legal paper that Grady had requested in September. Id. at 16. Grady stated that he had only requested and received 20 sheets of legal paper in September and requested the other "20 sheets she thought she gave [him]." Id. Fluke responded to the administrative remedy request contending that Tjeerdsma had made a mistake. Id. at 30. Fluke contacted Tjeerdsma, and she confirmed that Grady had received 20 sheets of paper for legal work on two occasions in September 2023. Id. Therefore, Fluke denied Grady's request for an additional 20 sheets of paper. Id.

In his second administrative remedy request dated October 11, 2023, Grady asserted that limiting him to 40 sheets of legal paper each month violates his First Amendment right to access the courts and renewed his request for 80 sheets of legal paper each month. Doc. 1-1 at 64. Without citing to any record evidence, Grady disputes that he requested 20 sheets of paper per week for a total of 80 sheets per month. Doc. 55 ¶ 31. But documents Grady signed and submitted as attachments to his complaint plainly establish that he did in fact request 20 sheets of legal paper per month. Doc. 1-1 at 64 ("I request for 80 sheets a month for remedy."); id. at 66 ("I request for 20 sheets a week for remedy as I'm indigent."). Associate Warden Reyes responded to the second administrative remedy request dated October 11, 2023:

> You are allowed to purchase legal paper from commissary. If you are indigent, legal paper will be supplied to you. You can request up to 40 sheets at a time. That paper can only be used for legal writing/typing. Unit Staff will track the number of pages that you send out in a month. If you submit the 40 for mail out, you can request an additional 20 sheets. It will then continue to be based on the number of pages that you have sent out. This is to verify that the provided paper is being used

6

for your legal purposes.

Doc. 1-1 at 62; see also Doc. 43 ¶ 32; Doc. 55 ¶ 32.

### E.    Seizure of Grady's Legal Mail

On October 3, 2023, Eilers informed Grady that his legal mail sent through unit staff cannot be written by another inmate. Doc. 43 ¶ 54; Doc. 43-3; Doc. 55 ¶ 54. Eilers explained to Grady that Operational Memorandum 3.3.C.7 provides that inmates do not have a right to assistance by a jailhouse lawyer or inmate paralegal.[4] Doc. 43 ¶ 54; Doc. 43-4; Doc. 55 ¶ 54. Eilers encouraged Grady to write his own legal documents to avoid having the documents seized as contraband. Doc. 43-8. On October 12, 2023, Grady brought two manilla envelopes and two regular envelopes containing legal mail to Tjeerdsma's office. Doc. 43 ¶ 55; Doc. 43-3. All four envelopes contained legal work handwritten by another inmate. Doc. 43 ¶ 55; Doc. 43-3. Eilers seized Grady's legal mail addressed to the state court judge who presided over his state criminal case. Doc. 1-1 at 3, 41; Doc. 43 ¶¶ 33, 55; Doc. 54 ¶ 4; Doc. 55 ¶ 33. The legal mail, which contained a state petition for writ of habeas corpus, was seized as contraband because the petition was not in Grady's handwriting. Doc. 1-1 at 41; Doc. 43 ¶¶ 33, 55; Doc. 54 ¶ 4; Doc. 55 ¶ 33. On October 18, 2023, Eilers and Tjeerdsma returned the contents of the four envelopes to Grady and reiterated that he is not allowed to possess legal work handwritten by another inmate. Doc. 43 ¶ 34; Doc. 43-3; Doc. 55 ¶ 34. Eilers and Tjeerdsma informed Grady that he could resubmit the legal work to be mailed, but if he did so, the legal work had to be in Grady's own handwriting. Doc. 43-3. Grady does not dispute what transpired on October 12 and 18, 2023, but he contends that because he has a learning

---

[4] Grady asserts that Operational Memorandum 3.3.C.7, which provides that inmates do not have a right to assistance by a jailhouse lawyer or inmate paralegal, is unconstitutional. Doc. 54 ¶ 11; Doc. 55 ¶ 54. In the 1915A screening order, this Court dismissed Grady's access-to-the-courts claim for denial of access to an inmate writ writer. Doc. 11 at 11. For the same reasons, this Court rejects Grady's contention that Operational Memorandum 3.3.C.7 is unconstitutional.

7

disability, "[i]ts [sic] the only way to have access to the courts." Doc. 55 ¶¶ 55, 56 (citing Doc. 54 ¶¶ 10, 11).

On October 19, 2023, Tjeerdsma called Grady into her office because Grady had submitted a kite requesting to send out mail. Doc. 43 ¶ 57; Doc. 43-3; Doc. 55 ¶ 57. Tjeerdsma took the mail out of the manila envelope to confirm that it was legal mail. Doc. 43 ¶ 57; Doc. 43-3; Doc. 55 ¶ 57. All four corners of the sheets of paper were stapled and/or taped shut. Doc. 43 ¶ 57; Doc. 43-3; Doc. 55 ¶ 57. The top sheet was in Grady's handwriting, but after separating other sheets that had been stapled or taped, Tjeerdsma discovered the other pages were written by another inmate. Doc. 43 ¶ 57; Doc. 43-3; Doc. 55 ¶ 57. Grady admitted to Tjeerdsma that he was aware that he was not permitted to have another inmate write his legal work. Doc. 43 ¶ 57; Doc. 43-3; Doc. 55 ¶ 57. Tjeerdsma asked Eilers to come to her office as a witness and to advise what was to be done with the legal mail. Doc. 43 ¶ 57; Doc. 43-3; Doc. 55 ¶ 57. After Eilers arrived, Grady stated that he had submitted the paperwork to prove a point. Doc. 43-3. Grady was sanctioned for refusing to follow Eilers' previous directive not to submit legal work containing another inmate's handwriting. Id. Tjeerdsma retained the envelopes, but returned the paperwork to Grady and reiterated that Grady could resubmit the paperwork provided it was in his own handwriting. Id. Grady contends that the October 19, 2023 encounter demonstrates that Tjeerdsma and Eilers read his legal work and, therefore, "impeded or hindered[]" his right to access the courts. Doc. 55 ¶ 57 (citing Doc. 54 ¶ 12).

On October 4, 2023, Grady submitted an inmate request for reasonable accommodation. Doc. 1-1 at 24; Doc. 43 ¶ 52. According to his request, Grady cannot spell or write, has concentration problems, and was in special education. Doc. 1-1 at 24. He requested DOC staff or another offender assist him with his legal work. Id. Grady's request for assistance with legal work

8

was denied. Id. at 23. Grady's DOC records indicated that he has a GED, and there is no record of any learning disability. Id. Grady contends that defendants did not review his education records, which indicate that he "was in IEP (special Ed) [his] whole life." Doc. 54 ¶ 10. Grady was informed that he needs to go to the education department for testing and assessment of needs if he wants to pursue his request for assistance with legal work. Doc. 1-1 at 23. He was informed that he could type instead of handwrite his legal work by submitting a kite requesting access to legal typing in the library. Id.

### F.      Conditions-of-Confinement Claim

On October 16, 2023, Grady submitted an informal resolution request to Tjeerdsma stating that he could not order floss loops through the indigent commissary and requested that floss loops be provided to him. Doc. 1-1 at 56; Doc. 43 ¶ 68; Doc. 55 ¶ 68. Tjeerdsma denied Grady's request for floss loops because floss loops were removed and no longer available, but Tjeerdsma informed Grady that floss picks are available. Doc. 1-1 at 55; Doc. 43 ¶ 68.

On September 15, 2023, Grady submitted a kite to Tjeerdsma stating that he had not been able to receive any shampoo or conditioner for the last couple of months because it was not available through indigent commissary. Doc. 1-1 at 99. Grady requested approval to order a different kind of shampoo, and Tjeerdsma informed Grady that he would be allowed to order indigent V05 shampoo, dandruff shampoo, and generic T-Gel shampoo. Id. On October 15, 2023, Grady submitted a kite to Eilers explaining that during the past three months, he had not been able to get the V05 shampoo, generic T-Gel and deodorant for which he was approved. Doc. 1-1 at 99; Doc. 43 ¶ 71; Doc. 55 ¶ 71. On October 16, 2023, Grady submitted an informal resolution request to Eilers reporting that indigent commissary had not permitted him to order shampoo or conditioner for the past three months because the items were out of stock. Doc. 1-1 at 86; Doc. 43

9

¶ 70; Doc. 55 ¶ 70. Eilers responded that commissary was contacted and that product is filled based on full pallet quantities directly from the manufacturer. Doc. 1-1 at 85; Doc. 43 ¶ 70; Doc. 55 ¶ 70. According to Eilers, Grady would be notified when the product arrives. Doc. 1-1 at 85; Doc. 43 ¶ 70; Doc. 55 ¶ 70. Grady contends he "never received or was able to get any of items complained about." Doc. 54 ¶ 14 (capitalization in original omitted).

## II.    Summary Judgment Standard

Under Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Rule 56(a) places the burden initially on the moving party to establish the absence of a genuine issue of material fact and entitlement to judgment as a matter of law. Id.; see also Celotex Corp. v. Catrett, 477 U.S. 317, 322–23 (1986). Once the moving party has met that burden, the nonmoving party must establish that a material fact is genuinely disputed either by "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence . . . of a genuine dispute." Fed. R. Civ. P. 56(c)(1)(A), (B); Gacek v. Owens & Minor Distrib., Inc., 666 F.3d 1142, 1145–46 (8th Cir. 2012); see also Mosley v. City of Northwoods, 415 F.3d 908, 910 (8th Cir. 2005) (stating that a nonmovant may not merely rely on allegations or denials). A party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials in his pleading, but must set forth specific facts showing that there is a genuine issue for trial. Gacek, 666 F.3d at 1145. In ruling on a motion for summary judgment, the facts and inferences fairly drawn from those facts are "viewed in the light most favorable to the party opposing the motion." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587–88 (1986) (quoting United States v. Diebold, Inc., 369 U.S. 654, 655 (1962) (per curiam)).

## III.    Analysis

### A.    Qualified Immunity

Defendants argue that they are entitled to summary judgment because "[t]he alleged actions or inactions of Defendants in this case do not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Doc. 42 at 5 (internal quotation omitted). Qualified immunity "shields a government official from liability in a § 1983 action unless the official's conduct violates a clearly established constitutional or statutory right of which a reasonable person would have known." Partlow v. Stadler, 774 F.3d 497, 501 (8th Cir. 2014). Courts use a two-step inquiry to determine whether qualified immunity applies: "(1) whether the facts shown by the plaintiff make out a violation of a constitutional or statutory right, and (2) whether that right was clearly established at the time of the defendant's alleged misconduct." Id. A plaintiff must meet both steps to defeat qualified immunity, and courts can begin (and perhaps end) with either step. Greenman v. Jessen, 787 F.3d 882, 887 (8th Cir. 2015).

### B.    Access-to-the-Courts Claim

"The Constitution guarantees prisoners a right to access the courts." White v. Kautzky, 494 F.3d 677, 679 (8th Cir. 2007). "[T]he basis of the constitutional right of access to courts" is "unsettled[.]" Christopher v. Harbury, 536 U.S. 403, 415 (2002). But the Supreme Court of the United States has held that "the fundamental constitutional right of access to the courts requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law." Bounds v. Smith, 430 U.S. 817, 828 (1977), abrogated on other grounds by Lewis v. Casey, 518 U.S. 343 (1996).

11

To succeed on a claim for denial of access to the courts, a plaintiff must show that he suffered an actual injury as a result of the defendants' actions. Lewis, 518 U.S. at 349. To satisfy the actual injury requirement, a plaintiff must "demonstrate that a nonfrivolous legal claim had been frustrated or was being impeded." Johnson v. Missouri, 142 F.3d 1087, 1089 (8th Cir. 1998) (quoting Lewis, 518 U.S. at 353 (footnotes omitted)). The actual injury requirement is a high threshold. Hartsfield v. Nichols, 511 F.3d 826, 831–32 (8th Cir. 2008). "Actual injury" means "actual prejudice with respect to contemplated or existing litigation, such as the inability to meet a filing deadline or to present a claim." Lewis, 518 U.S. at 348. The Supreme Court has discussed the actual injury requirement as follows:

> Because Bounds did not create an abstract, freestanding right to a law library or legal assistance, an inmate cannot establish relevant actual injury simply by establishing that his prison's law library or legal assistance program is subpar in some theoretical sense. . . . Insofor as the right vindicated by Bounds is concerned, meaningful access to the courts is the touchstone, and the inmate therefore must go one step further and demonstrate that the alleged shortcomings in the library or legal assistance program hindered his efforts to pursue a legal claim. He might show, for example, that a complaint he prepared was dismissed for failure to satisfy some technical requirement which, because of deficiencies in the prison's legal assistance facilities, he could not have known. Or that he had suffered arguably actionable harm that he wished to bring before the courts, but was so stymied by inadequacies of the law library that he was unable to even a file a complaint.

Lewis, 518 U.S. at 351 (internal quotation omitted). "The right of access to the courts is satisfied if the prisoner has 'the capability of bringing contemplated challenges to sentences or conditions of confinement before the courts.'" Zink v. Lombardi, 783 F.3d 1089, 1108 (8th Cir. 2015) (quoting Lewis, 518 U.S. at 356).

Defendants are entitled to summary judgment on Grady's access-to-the-courts claims because it is undisputed that Grady did not suffer any actual injury due to defendants' conduct. Grady alleges that lack of legal supplies precluded him from exhausting his state court remedies and filing petitions for writ of habeas corpus in state and federal court. Doc. 1 at 8–9. The alleged

12

denial of paper, pens, envelopes, and copies occurred in September and October 2023. Doc. 43 ¶ 10, Doc. 55 ¶ 10. In September and October 2023, Grady's appeal to the Supreme Court of South Dakota was pending. South Dakota law precluded Grady from filing a state habeas petition while his direct appeal was pending. Doc. 43 ¶ 40 (citing SDCL § 21-27-3.1); Doc. 55 ¶ 40. It is undisputed that on November 2, 2023, Grady's direct appeal was dismissed at his request. Doc. 43 ¶¶ 13, 41; Doc. 43-1 at 1; Doc. 55 ¶¶ 13, 41. The statute of limitations for filing a state habeas petition is two years from the date on which the judgment became final by the conclusion of the direct appeal. Doc. 43 ¶ 42 (citing SDCL § 21-27-3.3); Doc. 55 ¶ 42. Grady contends his court-appointed counsel "coerced" him to dismiss his appeal by "telling him it was Habeas Corpus issues and he was going to lose anyway." Doc. 54 ¶ 6; see also Doc. 55 ¶¶ 13, 41. Before the expiration of the applicable statute of limitations, Grady filed a state habeas corpus petition challenging his conviction in 51CRI21-004973 on May 14, 2024, nunc pro tunc May 13, 2024. Doc. 43 ¶ 12; Doc. 43-2; Doc. 55 ¶ 12. On January 29, 2025, nunc pro tunc January 27, 2025, Grady filed a supplemental application for writ of habeas corpus alleging that he had received ineffective assistance of counsel. Doc. 43 ¶ 44; Doc. 55 ¶ 44. Grady's state petition for writ of habeas corpus was denied on June 23, 2025. Doc. 43-1. Grady has not come forward with any evidence that the alleged failure to provide pens, papers, copies, or envelopes in September and October 2023 precluded him from timely challenging his state court conviction,[5] or that the denial of the petition was in any way related to the alleged failure to provide legal supplies in September

---

[5] In his complaint, Grady alleges that he could not file a federal petition for writ of habeas corpus due the alleged lack of legal supplies. Doc. 1 at 8–9. But in September and October 2023, Grady did not have a right to file a petition for writ of habeas corpus under 28 U.S.C. § 2254. Grady filed a petition for writ of habeas of corpus pursuant to 28 U.S.C. § 2254 on November 1, 2023. Grady v. Warden Brent Fluke, 5:23-CV-05075-RAL, Doc. 1 (D.S.D. Nov. 1, 2023). This Court dismissed Grady's § 2254 petition without prejudice for failure to exhaust his state court remedies. Id. at Doc. 8.

and October 2023. In his responsive filings, Grady does not address defendants' argument that he did not suffer any actual injury because of the conduct he contends denied him access to the courts.[6] See generally Docs. 53, 56.

There is a factual dispute whether Grady received 20 or 40 sheets of legal paper in September 2023. See Doc. 1-1 at 16; 30. If, as Grady contends, he received only 20 sheets of legal paper in September 2023, the Access-to-the-Courts Policy was violated. But any dispute whether defendants complied with the DOC's Access-to-the-Court policy is not a material issue of fact. See Erickson v. Nationstar Mortg., LLC, 31 F.4th 1044, 1048 (8th Cir. 2022) (recognizing that a fact is material if it may affect the outcome of the suit). It is well established that failure to comply with a prison policy is insufficient, as a matter of law, to give rise to a Section 1983 liability. Moore v. Rowley, 126 F. App'x 759, 760 (8th Cir. 2005) (per curiam) ("a violation of prison policy alone does not give rise to section 1983 liability."); Gardner v. Howard, 109 F.3d 427, 430 (8th Cir. 1997) ("there is no § 1983 liability for violating prison policy."). Accordingly, defendants are entitled to summary judgment on Grady's access-to-the-courts claims.

## C.    Legal Mail

Inmates have a First Amendment right to send and receive mail. Weiler v. Purkett, 137 F.3d 1047, 1050 (8th Cir. 1998). But that "right may be limited by prison regulations that are reasonably related to legitimate penological interests." Id. In Turner v. Safley, the Supreme Court held that prison rules and restrictions on First Amendment rights are constitutional only "if

---

[6] Grady alleges, without citation to any record evidence, that "they have went so far as to deny him counsel on his Habeas Corpus which is mandate[d] by state statute 21-27-4." Doc. 53 at 5. Bare allegations such as this are insufficient to defeat summary judgment. Moreover, the statute Grady cites, SDCL § 21-27-4, provides that authority to appoint counsel in a state habeas proceeding rests with the judge presiding over the proceeding, not the South Dakota Department of Corrections.

[they are] reasonably related to legitimate penological interests." 482 U.S. 78, 89 (1987). The Court in Turner provided four factors to determine whether a prison rule withstands scrutiny:

> (1) whether there is a valid rational connection between the regulation and the legitimate government interest it purports to further; (2) whether the inmate has an alternative means of exercising his constitutional right; (3) the impact that accommodation of the inmate's right would have upon others, including inmates as well as non-inmates; and (4) the absence of a ready alternative to the regulation.

Thongvanh v. Thalacker, 17 F.3d 256, 259 (8th Cir. 1994). This Court must give "considerable deference to the determinations of prison administrators who, in the interests of security, regulate the relations between prisoners and the outside world." Thornburgh v. Abbott, 490 U.S. 401, 408 (1989) (citation omitted). Deference is accorded to prison administrators because the realities of running a penal institution are complex, and courts are ill-equipped to deal with problems of prison administration. Jones v. N.C. Prisoners' Lab. Union, Inc., 433 U.S. 119, 126 (1977). As the Supreme Court observed in Turner, "[r]unning a prison is an inordinately difficult undertaking that requires expertise, planning, and the commitment of resources, all of which are the province of the legislature and executive branches of government." 482 U.S. at 84–85.

It is undisputed that Tjeerdsma and Eilers refused to mail Grady's legal mail handwritten by another inmate because inmates are not permitted to possess legal materials prepared by another inmate. Doc. 1-1 at 3, 41; Doc. 43 ¶ 33; Doc. 54 ¶ 4; Doc. 55 ¶ 33. Refusing to process mail that contains contraband furthers a legitimate penological interest. Smith v. Delo, 995 F.2d 827, 830 (8th Cir. 1993) (internal citation omitted). Grady had reasonable alternatives available to exercise his right to send legal mail. He could prepare the legal documents in his own handwriting or type the documents. Grady had access to legal reference materials via his tablet or a kiosk. Doc. 43 ¶¶ 58, 59; Doc. 43-6 at 3–4. Tjeerdsma and Eilers returned to Grady the legal documents handwritten by another inmate so that Grady could prepare the same documents in his

15

own handwriting. Doc. 43-3. In fact, it is undisputed that Grady was able to file an application for writ of habeas corpus as well as a supplemental application. Doc. 43 ¶¶ 12, 44; Doc. 43-1 at 1; Doc. 43-2; Doc. 55 ¶¶ 12, 44. In a Memorandum Opinion and Order dated June 23, 2025, then-Circuit Court Judge Robert Gusinsky denied Grady's application for petition for writ of habeas corpus for failure to state a claim upon which relief can be granted. Doc. 43-1. There is no evidence the denial of Grady's state habeas petition was in any way related to the fact that Tjeerdsma and Eilers, in accordance with prison policy, refused to mail a purported petition for writ of habeas corpus containing another inmate's handwriting.

It appears that Grady contends that he has an unfettered constitutional right to receive assistance from an inmate writ writer. But that is not the law, and this claim did not survive screening. Doc. 11 at 11. In essence, Grady requests that this Court hold that Operational Memorandum 3.3.C.7, which provides that inmates do not have a right to assistance by a jailhouse lawyer or inmate, should not apply to him because he claims that he cannot spell or write, has concentration problems, and was in special education. See Doc. 1-1 at 24. The Access-to-the-Courts Policy provides that prisoners may "request assistance from legal staff by sending a completed ADA Request for Accommodation form to the ADA Facility Coordinator." Doc. 43-6 at 4. Grady submitted a request for accommodation, and he was advised that if he wished to pursue his request, he would be referred to the education department for testing and assessment. Doc. 1-1 at 23–24. There is no evidence that Grady requested a referral to the education department. Grady's assertion that having another inmate prepare his legal documents because he has a learning disability is "the only way to have access to the courts[]" is without merit. Doc.

16

55 ¶ 55.[7] The Access-to-the-Courts Policy provided a reasonable alternative to access the courts if Grady, in fact, has a learning disability which requires that he has assistance with legal work. That Grady did not seek a referral for testing and assessment to determine whether he has a disability does not mean that he has been denied access-to-the-courts or that refusing to mail legal documents written by another inmate is a violation of his right to send mail. Applying the facility's policies and procedures uniformly to all inmates is a legitimate penological interest. See, e.g., Goodwin v. Turner, 908 F.2d 1395, 1399 (8th Cir. 1990) (recognizing that treating all inmates equally is a legitimate penological interest).

Grady contends that Tjeerdsma and Eilers "read" his legal mail, thereby impeding or hindering his access to the courts. Doc. 55 ¶ 57. Defendants deny reading the contents of Grady's legal work. Doc. 43 ¶ 57. Whether skimming Grady's legal work to confirm that that it was not handwritten by another inmate constitutes "reading" is not an issue this Court must decide. When prison officials open *privileged* mail outside the presence of the prisoner, it can give rise to an access-to-the-courts claim. See Powells v. Minnehaha Cnty. Sheriff Dep't, 198 F.3d 711, 712 (8th Cir. 1999) (per curiam). Here, it is undisputed that Grady was present when Tjeerdsma and Eilers inspected his legal mail to confirm that it was not handwritten by another inmate. Doc. 43 ¶ 57; Doc. 43-3; Doc. 55 ¶ 57. But more importantly, the mail Tjeerdsma and Eilers inspected was not privileged. "Privileged prisoner mail, that is mail to or from an inmate's attorney and identified as such, may not be opened for inspections for contraband except in the presence of the prisoner." Jensen v. Klecker, 648 F.2d 1179, 1182 (8th Cir. 1981) (citing Wolff v. McDonnell, 418 U.S. 539,

---

[7] When Grady advised Tjeerdsma and Eilers that he had had another inmate write his legal work because he "isn't good with legal work[,]" Tjeerdsma and Eilers reminded Grady that he could obtain assistance through an ADA accommodation process and that legal typing is available if handwriting is an issue. Doc. 1-1 at 3.

17

576–77 (1974)). Other mail, for example to or from a court, is not privileged and may be opened and inspected outside the presence of the prisoner. See Moore, 126 F. App'x at 760 (holding that a prisoner has no constitutional right to have his bankruptcy petition mailed without being inspected first). Finally, as this Court has previously discussed, Grady fails to articulate how inspecting, skimming, or reading his legal mail on October 19, 2023, precluded him from eventually filing a state habeas petition. On October 19, 2023, South Dakota law did not permit Grady to file a state habeas petition because Grady's direct appeal to the Supreme Court of South Dakota was pending at that time. For all these reasons, defendants are entitled to summary judgment on Grady's First Amendment right to send and receive mail claim.

Fluke and Wasko are entitled to summary judgment on Grady's First Amendment right to send and receive mail claim for the additional reason that there is no evidence that Fluke or Wasko were personally involved in, or even aware, that Grady's legal mail has been seized. Doc. 43 ¶ 65.[8] "Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." Parrish v. Ball, 594 F.3d 993, 1001 (8th Cir. 2010) (citation omitted). "[A] supervising officer can be liable for an inferior officer's constitutional violation only if he directly participated in the constitutional violation, or if his failure to train or supervise the offending actor caused the deprivation." Id. (internal quotation omitted). "A single incident, or a series of isolated incidents, usually provides an insufficient basis upon which to assign supervisory liability."

_____

[8] Grady contends that Fluke and Wasko were "effectively" notified because he exhausted the available administrative remedies. Doc. 55 ¶ 65. There is no record evidence that Fluke or Wasko received any grievance or appeal or responded to any grievance or appeal regarding the seizure of Grady's mail. But even if they did, responding to a grievance is insufficient to impose § 1983 liability on a prison administrator. See Rowe v. Norris, 198 F. App'x 579, 580 (8th Cir. 2006) (per curiam).

18

Howard v. Adkison, 887 F.2d 134, 138 (8th Cir. 1989) (citation omitted). Grady has not come forward with any evidence that Fluke or Wasko had any knowledge that his legal mail was seized or that they failed to train or supervise Tjeerdsma or Fluke.

### D.    Eighth Amendment Conditions-of-Confinement Claim

Grady alleges an Eighth Amendment conditions-of-confinement claim against Wasko, Fluke, Eilers, and Tjeerdsma for failure to provide him with hygiene products. See Doc. 1 at 10. "[T]he Constitution 'does not mandate comfortable prisons'; it prohibits 'inhumane ones.'" Williams v. Delo, 49 F.3d 442, 445 (8th Cir. 1995) (quoting Farmer v. Brennan, 511 U.S. 825, 832 (1994)). The Supreme Court has clarified that only "extreme deprivations" that deny "the minimal civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment violation." Hudson v. McMillian, 503 U.S. 1, 9 (1992) (internal quotation omitted). The Supreme Court has listed as basic human needs "food, clothing, shelter, medical care, and reasonable safety[.]" Helling v. McKinney, 509 U.S. 25, 32 (1993) (internal quotation omitted). The Eighth Circuit has held that "inmates are entitled to reasonably adequate sanitation, personal hygiene, and laundry privileges, particularly over a lengthy course of time." Howard, 887 F.2d at 137 (citations omitted). See also Myers v. Hundley, 101 F.3d 542, 544 (8th Cir. 1996) ("a long-term, repeated deprivation of adequate hygiene supplies violates inmates' Eighth Amendment rights").

In order to prevail on an Eighth Amendment conditions-of-confinement claim, a prisoner must prove that (1) objectively, the deprivation was "sufficiently serious" to deprive him of "the minimal civilized measure of life's necessities" or to constitute "a substantial risk of serious harm" to his health or safety; and (2) subjectively, the defendants were deliberately indifferent to the risk of harm posed by the deprivation. Simmons v. Cook, 154 F.3d 805, 807 (8th Cir. 1998) (quoting

19

Farmer, 511 U.S. at 834). In this case, it is not necessary for the Court to consider whether the denial of certain hygiene supplies for a few weeks is sufficient to satisfy the objective prong, because the record is wholly devoid of evidence sufficient to satisfy the subjective prong.

To satisfy the subjective prong, "the evidence must show that the officers recognized that a substantial risk of harm existed *and* knew that their conduct was inappropriate in light of that risk." Krout v. Goemmer, 583 F.3d 557, 567 (8th Cir. 2009) (emphasis in original). As the Eighth Circuit has recently explained,

> Deliberate indifference is more than mere negligence or the ordinary lack of due care for a prisoner's safety. It is more even than gross negligence. Liability requires a showing that the defendants acted with a highly culpable state of mind that resembles criminal-law recklessness and approaches actual intent. The evidence must demonstrate that officers understood that a substantial risk of harm or medical need existed and that they knew their conduct was inappropriate in light of that risk or need.

Hamilton v. Earl, 166 F.4th 1143, 1146 (8th Cir. 2026) (internal citations omitted). The United States Court of Appeals for the Eighth Circuit has instructed that "[w]hen there are multiple defendants who played limited roles in the conduct complained of, the determination of whether an individual defendant is entitled to qualified immunity is based upon that defendant's knowledge and conduct at the time or times he or she participated in that conduct." Cannon v. Dehner, 112 F.4th 580, 586 (8th Cir. 2024). Because deliberate indifference is a subjective inquiry, a district court must "assess each defendant's 'knowledge at the time in question, not by hindsight's perfect vision.'" Id. at 587 (quoting Schaub v. VonWald, 638 F.3d 905, 915 (8th Cir. 2011)).

Grady claims that Wasko, Fluke, Eilers, and Tjeerdsma have denied to indigent inmates like Grady hygiene supplies including shampoo, conditioner, toothpaste, toothbrush, tooth floss picks, body wash, and deodorant for one to three months. Doc. 1 at 10. Claims based on vicarious liability are not cognizable under 42 U.S.C. § 1983. Marsh v. Phelps Cnty., 902 F.3d 745, 754

20

(8th Cir. 2018). "Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." Id. (alteration in original) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 676 (2009)); Jones v. City of St. Louis, 104 F.4th 1043, 1050 (8th Cir. 2024). In other words, "each Government official, his or her title notwithstanding, is only liable for his or her own misconduct." Marsh, 902 F.3d at 754 (quoting Ashcroft, 556 U.S. at 677). Grady has not come forward with any evidence that Fluke or Wasko had any knowledge that Grady was allegedly denied hygiene supplies for one to three months. Because Grady has not demonstrated that Fluke or Wasko "actually knew of but deliberately disregarded" his need for hygiene items, Fluke and Wasko are entitled to summary judgment on Grady's Eighth Amendment conditions-of-confinement claim. Dulany v. Carnahan, 132 F.3d 1234, 1239 (8th Cir. 1997) (citation omitted)

Although it is undisputed that Tjeerdsma[9] refused Grady's request for floss loops, see Doc. 1-1 at 55; Doc. 43 ¶ 68, it is also undisputed that Tjeerdsma denied Grady's request for floss loops because they were no longer available and informed Grady that floss picks instead were available. Doc. 1-1; Doc. 43 ¶ 68. Offering prisoners floss picks in lieu of floss loops, as a matter of law, is not deliberate indifference. Further, although Grady asserts that he experienced gum bleeding and tooth deterioration, see Doc. 1 at 10, there is no evidence Tjeerdsma, or any other defendant, was aware that Grady experienced any dental problems because floss loops were no longer available.

Initially, when Grady notified Tjeerdsma that he had not been able to receive through indigent commissary any shampoo or conditioner for approximately two months, Tjeerdsma notified Grady that he would be permitted to order indigent VO5 shampoo, dandruff shampoo, and

---

[9] Because there is no record evidence that Eilers was aware of Grady's request for floss loops, Eilers, as a matter of law, cannot be liable for any alleged failure to provide floss loops.

21

generic T-Gel. Doc. 1-1 at 99. Subsequently, Grady made Tjeerdsma and Eilers aware that he had not been able to obtain the hygiene items for which he had been approved because the items were out of stock. Doc. 1-1 at 86, 99; Doc. 43 ¶¶ 70; 71; Doc. 55 ¶¶ 70; 71. Eilers contacted commissary to investigate Grady's concern and learned that product is filled based on full pallet quantities directly from the manufacturer and that Grady would be notified when the product arrives. Doc. 1-1 at 85; Doc. 43 ¶ 70; Doc. 55 ¶ 70. Grady contends that he "never received or was able to get any of items complained about." Doc. 54 ¶ 14 (capitalization in original omitted). But there is no evidence that Tjeerdsma and Eilers were aware that Grady did not receive the items. Grady alleges that he suffered from dandruff, dry scalp, dry and itchy skin, and a skin rash due to the lack of hygiene items. Doc. 1 at 10. Again, however, there is no evidence that Tjeerdsma and Eilers were aware that Grady experienced any of these symptoms.

In his response to defendants' motion for summary judgment, Grady invites this Court to "issue a subpoena, for the government officials['] emails and text messages, this would allow the court a better vantage point of the whole situation." Doc. 56 at 4 (capitalization in original omitted). There is no reason that Grady could not have served discovery requests seeking production of the defendants' emails and text messages. But the discovery deadline expired on May 22, 2025, see Doc. 24 ¶ 3, and Grady has not demonstrated any reason that this Court should delay ruling on defendants' motion for summary judgment to permit him to seek defendants' emails and text messages. See generally Fed. R. Civ. P. 56(d).

Grady has not presented admissible evidence that Tjeerdsma and Eilers understood that the lack of certain hygiene items for a brief time posed a substantial risk of harm to Grady such that they knew that their actions were inappropriate in light of that risk. Giving Grady the benefit of all favorable inferences from the record, perhaps there may be question of fact whether Tjeerdsma

22

and Eilers were negligent for not following up with commissary to confirm that Grady had received the requested items that had been out of stock. But there is no record evidence to demonstrate that Tjeerdsma or Eilers "acted with a highly culpable state of mind that resembles criminal-law recklessness and approaches actual intent." Hamilton, 166 F.4th at 1146 (citation omitted). For these reasons, Tjeerdsma and Eilers are entitled to summary judgment on Grady's Eighth Amendment conditions-of-confinement claim.

## IV.    Grady's Motion to Appoint Counsel and Related Motions (Docs. 59, 64, 67, 68)

After Grady responded to defendants' motion for summary judgment, he filed a motion for appointment of counsel. Doc. 59. Grady previously filed a motion for appointment of counsel, Doc. 14, which this Court denied, Doc. 33 at 4–5. Defendants seek leave, in accordance with Rule 6(b)(1)(B), to respond to Grady's second motion for appointment of counsel after expiration of the time for responding. Doc. 64. Grady opposes defendants' motion to extend. Doc. 67. Grady submitted a "Motion for Defendants [sic] Motion in Response to Motion for Court Appointed Counsel." Doc. 68.

In his second motion for appointment of counsel, Grady contends that he is unable to investigate the facts of the case, including interviewing and deposing witnesses, that he has been subjected to misconduct of the medical staff, that the case involves medical issues that require expert testimony, that this is a complex case involving several different legal claims against different defendants, and that he is unable to review policy not accessible to inmates. See generally Docs. 59, 60, 61. Some of the arguments Grady raises in support of his motion for appointment of counsel are simply not applicable to this case at this stage of the proceedings. Grady's deliberate indifference claim to serious medical needs did not survive screening. Doc. 11 at 16–18. Grady has not identified any policy relevant to the issues in this case to which he does not have access.

23

Grady's claims in this case all involve the same defendants and are neither factually nor legally complex. Finally, when Grady filed his second motion for appointment of counsel, he had already responded to defendants' motion for summary judgment, and the time for investigating the facts and conducting discovery had expired. Doc. 24 ¶ 3. Because this Court has granted defendants' motion for summary judgment, there is no need to conduct any further factual investigation or discovery. Accordingly, Grady's second motion for appointment of counsel, Doc. 59, is denied, and the remaining motions are denied as moot.

## V.    Conclusion

For these reasons, it is

ORDERED that defendants' motion for summary judgment, Doc. 41, is granted. It is further

ORDERED that Grady's motions opposing defendants' motion for summary judgment, Docs. 52, 56, are denied as moot. It is further

ORDERED that Grady's motion for appointment of counsel, Doc. 59, is denied. It is further

ORDERED that defendants' motion to extend, Doc. 64, is denied as moot. It is further

ORDERED that Grady's motion in response to defendants' motion to extend, Doc. 67, is denied as moot. It is further

ORDERED that Grady's motion in response to defendants' response, Doc. 68, is denied as moot. It is finally

24

ORDERED that Grady's request for a status conference, Doc. 65, is denied as moot.

DATED this 17th day of March, 2026.

BY THE COURT:

ROBERTO A. LANGE
CHIEF JUDGE

25